Morris Schnitzer v. Commissioner.
Schnitzer v. Commissioner
Docket No. 22181.
United States Tax Court
1953 Tax Ct. Memo LEXIS 341; 12 T.C.M. (CCH) 250; T.C.M. (RIA) 53080; March 12, 1953
*341 S. J. Bischoff, Esq., and Robert T. Jacob, Esq., for the petitioner. J. O. Durkan, Esq., and John D. Picco, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1943 and 1944 in the respective amounts of $7,193.13 and $26,530.29. The issues before us are (1) is $17,874.10 deductible as a bad debt; (2) is $83,514.53 deductible as a guaranty (indemnity) loss, and (3) if such amounts are deductible, in what year are they deductible? Findings of Fact Petitioner, a resident of Portland, Oregon, in 1943 and 1944, filed his income tax returns for those years with the collector of internal revenue for the district of Oregon. Petitioner was engaged in the business of buying and selling new and used iron, steel, tools and machinery, and he conducted such business under the name and style of Schnitzer Steel Products Company. Morris Schnitzer and Schnitzer Steel Products Company will hereinafter be referred to as the petitioner. During the years before us petitioner kept his books and filed his income tax returns on an accrual basis. By stipulation the entire *342 record of ; affd., ; certiorari denied, , is made part of the present record and the facts in the Sam Schnitzer case are herein adopted by reference. The facts, starting with the second paragraph on page 48 and continuing through the last full paragraph on page 54, are of particular significance to the present case. Individuals, partnerships and corporations hereinafter mentioned have their antecedents in Sam Schnitzer. In 1943 after the sale of Oregon Steel to Hall & Mears, the five former stockholders (petitioner included) of Oregon Steel failed to recover $303,625.90 of their advances to Oregon Steel. At that time the books indicated that their total advances aggregated $454,625.90. Alaska Junk computed the loss as follows: Alaska
Morris Schnitzer
Junk
d/b/a/ Schnitzer
Company
Steel Products
Total
Open Account
$428,132.13
$ 26,493.77
$454,625.90
Less - Third Mortgage (prorated in proportion to
open account balances)
142,200.33
8,799.67
151,000.00
Balance After Mortgages
$285,931.80
$ 17,694.10
$303,625.90
Liability per Guarantee
202,350.60
101,275.30
303,625.90
Balance Due Alaska Junk Company from Morris
Schnitzer
$ 83,581.20
($ 83,581.20)
*343 Further negotiations were carried on with regard to petitioner's share of the $303,625.90. During these negotiations correspondence was carried on with petitioner while he was in the Army overseas. The negotiations resulted in a settlement agreement, dated November 30, 1944. It was signed on petitioner's behalf by his father, Sam Schnitzer, as attorney-in-fact. It recited the making of the prior agreement between petitioner and Alaska whereby petitioner would pay to Alaska Junk an excess of two-thirds of the aggregate loss sustained by Oregon Steel. It also determined the amount of petitioner's liability to Alaska Junk as the sum of $83,514.53, and the joint ownership of the two mortgages totaling $400,000. It recognized the interest of the petitioner in the one mortgage ($249,000) to the extent of $75,000 and the interest of the petitioner in the other mortgage ($151,000) to the extent of $8,799.67, making petitioner's total interest in the two mortgages in the sum of $83,799.67. After recital of these facts, petitioner agreed to assign to Alaska Junk his interest in the two notes and mortgages totaling $83,799.67 in payment of his liability of $83,514.53, and the parties would *344 then release each other from further liability. Pursuant to this agreement petitioner's father, Sam Schnitzer, acting as attorney-in-fact, executed and delivered to Alaska Junk an assignment of petitioner's interest in the two notes and mortgages named above. The following entries were made in petitioner's books of account: In the journal under date of November 30, 1944: Mortgage receivable - O.E.S.R.M.
$ 83,799.67
Investment - Stock O.E.S.R.M.
62,500.00
Accounts receivable O.E.S.R.M.
$146,299.67
To give effect to transactions extinguishing portion of
account of O.E.S.R.M.
M. Schnitzer d/a
10.00
Loss on sale of stock - O.E.S.R.M.
62,490.00
Investments - O.E.S.R.M. - stock
62,500.00
To record sale of stock for $10.00
Bad debts (Guarantee plus a/cs receivable)
101,388.63
Guarantee payable
83,514.53
Accounts receivable - O.E.S.R.M.
17,874.10
To record entry reflecting guarantee payable to Alaska
Junk Co. and to write off balance of accounts receivable
of O.E. Steel R.M.
Alaska Junk Co.
285.14
Guarantee payable
83,514.53
Mortgage receivable
83,799.67
To record payment of guarantee
Petitioner in his 1944 income tax return *345 took a deduction designated as "Guaranty loss and bad debts in the amount of $101,388.63". The items composing this deduction were as follows: Oregon Electric Rolling Mills, Inc.
Accounts Receivable
$ 17,874.10
Loss on guaranty to Alaska Junk
Co.
83,514.53
Total
$101,388.63
Respondent disallowed these deductions and explained the adjustment as follows: "The Bureau holds that the sums designated in your 1944 return as (1) accounts receivable due from the Oregon Electric Steel Rolling Mills, and (2) loss on guarantee of the account of the Oregon Electric Steel Rolling Mills constituted in fact a part of the cost to you of the stock of the Oregon Electric Steel Rolling Mills. The Bureau further holds, therefore, that the entire loss, if any, realized by you on the sale of the stock of the Oregon Electric Steel Rolling Mills was sustained in 1943 and that you sustained no deductible loss by reason of such transaction during the year 1944." Petitioner by his 1942 agreement with the partners of Alaska Junk agreed to share with them any prospective losses from the operation of Oregon Steel in the same ratio as their proprietary interest in Oregon Steel. Of the *346 $303,625.90 aggregate loss as of November 1943, the sum of $101,388.63 represented, in part, petitioner's capital contribution. Opinion Petitioner contends that the sum of $17,874.10 was a bad debt loss and that this loss was sustained in 1943. In addition, petitioner also contends that the sum of $83,514.53 was a loss which arose out of the settlement of his guaranty liability to Alaska Junk, and this loss was deductible in full in 1944. Respondent, on the other hand, contends that the aggregate of these sums, that is, $101,388.63, constitutes a capital contribution by petitioner to Oregon Steel, and that a capital loss was sustained when petitioner sold his Oregon Steel stock in 1943. In the alternative, respondent urges, if petitioner's advances constitute a debt which was not repaid, the debt was a nonbusiness debt. The issues in this case arise out of the identical transactions which we considered in ; affd., ; certiorari denied, . In the present case the sum of $101,388.63 represents one-third of the aggregate loss sustained by the original shareholders (petitioner and Alaska Junk) *347 after their sale of Oregon Steel stock and the settlement of its liabilities. In the Sam Schnitzer case Alaska Junk claimed that the other two-thirds of the aggregate loss was a bad debt deduction. To the contrary, on page 64 of the opinion we held that "all of the advances were contributions to capital and that the ensuing worthlessness of a part thereof was not a bad debt." Without anything more, the decision in Sam Schnitzer would be determinative of the issues now before us. However, petitioner suggests that there is a difference in the present case. Petitioner says that he had an agreement to indemnify Alaska Junk for any loss which it sustained in excess of two-thirds of the total loss, and his indemnity to Alaska Junk could in no way be considered a capital contribution to Oregon Steel. In Sam Schnitzer we considered this agreement and found as a fact the following, on page 52: "In connection with the bond issue and stock transfer Morris Schnitzer orally agreed with Sam and Rose Schnitzer and Harry J. and Jennie Wolf that he would bear one-third of any loss that might result from the total amounts advanced and to be advanced by all five to the corporation, over and above *348 the advances credited to stock subscriptions. They in turn agreed to bear two-thirds of any such loss. Morris Schnitzer and Alaska Junk continued thereafter to make advances, as before, and these advances were credited to their open accounts with the corporation in the same way as before and charged to the corporation's open accounts with them." In our opinion, on page 63, we said: "* * * Obviously in apprehension of losses, all five stockholders agreed that Morris Schnitzer should bear one-third and Alaska Junk two-thirds of total losses that might be sustained. Thus the proportion of risk fixed by the relative stockholdings was projected to cover all the advances, and in the final settlement Morris paid Alaska Junk $83,581.20 [1] to reduce the partnership losses to two-thirds of the total lost. The mere existence of such an agreement is incompatible with testimony that repayment of the advances was anticipated or with their characterization as loans. The stockholder had in view a nice matching of losses to the proportion of his corporate shareholding. Such a limitation is an incident of stock ownership, not of the debtor-creditor relation." *349 From the record before us we are unable to say, of the aggregate $303,625.90 of losses unrecovered by Alaska Junk and petitioner, that Alaska Junk's two-thirds was a capital contribution and that petitioner's one-third was a bad debt loss. The entire loss was based on like advances of Alaska Junk and petitioner to Oregon Steel; the entire loss resulted solely from the operation of Oregon Steel. We think it is reasonable to conclude that both losses were written with the same red ink. In this situation one part of the aggregate loss can not be a capital loss and the other a bad debt deduction. The evidence in the present case does not add or deduct from our findings and opinion in Sam Schnitzer, wherein we held that two-thirds of the total loss was a capital contribution. The agreement between petitioner and Alaska Junk merely provided that the petitioner would share in any prospective losses in the ratio of his proprietary interest in Oregon Steel, and this is just what was done. The respondent must, therefore, be sustained in his determination that the sum of $101,388.63 was a capital contribution. If, for the sake of argument, we were to conclude that the sum of $17,874.10 was *350 in fact a bona fide debt, we would be unable to hold that this amount could be a bad debt deduction because petitioner has failed to show the worthlessness of the debt in the year in which the deduction was claimed. In resolving the question as to when the capital loss was accrued we conclude that the loss occurred in the year petitioner sold or transferred his interest in Oregon Steel. It is undisputed that petitioner's stock was sold in 1943; hence the capital loss occurred in that year. Petitioner, in making his argument for a bad debt deduction, maintains that the loss was not ascertained until some time in 1944. However, all of the transactions which caused the loss were concluded when the stock was sold in 1947. The loss was definite; no other facts could alter it; it only remained for the parties to ascertain how petitioner could pay his share. Since petitioner was on an accrual basis it was proper for him to take the capital loss when it occurred as distinguished from the time he actually paid his obligation. See . Decision will be entered for the respondent. Footnotes
1. Evidence in the present case indicates that the payment was $83,514.53.↩